## Linnard's Appeal.

| 93 | 313 |
| 154 | 528 |
| 93 | 313 |
| 204 | [2]482 |
| 204 | [2]483 |

1. The will of L., consisting of an original paper dated December 5th 1877, executed in the presence of two subscribing witnesses and of four codicils signed by her, but not dated or witnessed, was admitted to probate September 26th 1878. Some time after its execution the testatrix made several alterations in her will by drawing a pen transversely across the words creating some of the legacies, and one bequest in the seventh clause she altered by drawing her pen across the word "five," and writing over it the word "three," and also placing the numeral "3" both above and beneath the erased word. Afterwards she signed what appeared to be her first codicil. Other codicils followed in their order, without date or subscribing witnesses. The probate exhibited the erasures, and all the alterations were distinctly legible. The court below held that in the absence of proof of re-execution of the will after the alteration in the seventh clause was made, the substitution could not be sustained. *Held* (reversing the court below), that while the erasures in the other clauses of the will were evidently intended to operate as a cancellation of her will as to those bequests, no such intention could be inferred from the erasure and interlineation in the seventh clause, and that they were clearly not intended to revoke the legacy.

2. Per STERRETT, J. The probate of the will, as we now find it, was an adjudication of its due execution, including by necessary implication, the republication of the instrument, after the alteration in question was made. This established, prima facie at least, the validity of the legacy, and certainly in the absence of proof that the alteration was made after the last codicil, the legacy should have been permitted to participate in the distribution.

February 27th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from the Orphans' Court of *Philadelphia county:* Of January Term 1880, No. 153.

Appeal of Eugene Linnard, trustee of Cornelia Purnell, from the decree of the court in the distribution of the estate of Katherine M. Linnard, deceased.

Miss Katherine M. Linnard died September 22d 1878, leaving a will dated December 5th 1877, with sundry codicils thereto, which was duly admitted to probate, and letters testamentary issued thereon September 26th 1878.

By said will she bequeathed in pecuniary legacies nearly $19.000, while the balance for distribution in the hands of the accountant only amounted to $13,521.81.

By the seventh clause of her will she provided as follows: " I give and bequeath to my nephew, Eugene Linnard, the sum of ~~five~~ three 3 hundred dollars, in trust, to invest and keep invested the same during the life of Cornelia Purnell (Neely), and to pay over the income thereof unto her so long as she may live; and at her decease, I direct that the said sum shall become part of my residuary estate."

The auditing judge, Ashman J., in his adjudication in an opinion, inter alia, said: " Some time after executing her will, the

[Linnard's Appeal.]

testatrix made various changes in her will by running her pen through several bequests, and in one instance by substituting a different sum for the sum originally written. She did not however re-sign or re-acknowledge the instrument.

"What amounts to a cancelling of a will, under the thirteenth and fourteenth sections of the Act of 1833, was carefully discussed by Judge STRONG in Evans's Appeal, 8 P. F. Smith 238. It was there held that cancellation, as distinguished from destruction, implied a preservation of the instrument, but with something on it indicating that it had ceased to be operative, and that such cancellation might be wrought by lines drawn, as in this instance, across the body of the paper. There one entire clause of the will, the signature to the will and codicil, were obliterated, and the word ' cancelled' was written on the back of the paper, and the will was torn. The point is a new one, but the intention of the testatrix to cancel the legacy in the second clause to Eugene Linnard, to Stephen B. Penrose in the sixth clause, and the bequest in the first codicil, is manifest; and the means taken must be held to be effectual. At the same time her intention must be held to be restricted to the revoking of the several legacies thus obliterated, leaving the will to stand as altered. In the bequest in the seventh clause to Eugene Linnard, the word 'five' was erased and 'three' written above it, whilst this cancellation of the original amount of the legacy must be held to revoke the legacy, the substitution of the new amount, unaccompanied with a new acknowledgment or signature, cannot be regarded as a valid bequest under the Act of 1833, and Eugene Linnard will take nothing under this clause."

Eugene Linnard, legatee and trustee for Cornelia Purnell, excepted to the disallowance of said legacy. After argument upon the exceptions, the court dismissed the same, Hanna, P. J., in an opinion, inter alia, saying:

"The will of testatrix, as admitted to probate, bears various marks of alteration of certain bequests intended by her, whereby the words of the bequests are not entirely obliterated, but partially obscured by parallel and transverse ink lines, still leaving the words, figures and sentences legible, In the second item, a legacy of $500; in the sixth item, a legacy of $200; and an entire codicil are all in like manner cancelled. In the seventh item, the word 'five' is also stricken out, and the word 'three' written above, and the numeral '3' both above and beneath, in these particulars only disturbing the structure of the clause as at first transcribed. The auditing judge held, and we think correctly, that the mode of cancellation adopted by testatrix, was a sufficient compliance with the provisions of the Act of April 8th 1833, Purd. Dig. 1476, pl. 16, 17, and that the legacies embraced in the items thus partially obliterated, were to be considered as revoked. No specific mode of cancellation is prescribed by the act, and it seems to be purely

[Linnard's Appeal.]

a matter of intention of the testator. If this is apparent from the means employed, the requirements of the act are fulfilled: Evans's Appeal, 8 P. F. Smith 238; Will of Wm. S. Fuguet, dec'd, 32 Leg. Int. 179. But the auditing judge was also of opinion, that the legacy in item seven, wherein the word 'five' is partially erased, and 'three' written above between the ruled lines, was also revoked, for the reason that the substitution of the word 'three' and figure '3,' required a re-acknowledgment by the testatrix to render the bequest valid.

"After a careful consideration of the subject, we have not been convinced of any error in this conclusion, and the exceptions thereto are dismissed. The testimony shows, that at the time the will was 're-signed,' it did not contain this alteration; and when it was made by the testatrix, did not appear. From all that was shown to the contrary, it may have been made subsequent to the last codicil; and the Act of 1833 declares expressly, that no will in writing concerning real or personal estate 'shall be repealed, nor shall any devise or direction therein be altered, otherwise than by some other will or codicil in writing,' etc."

From the decree dismissing his exceptions, the appellant took this appeal.

*John R. Read* and *Silas W. Pettit*, for appellant.—If the will of testatrix in this case cannot take effect as she wrote it, because not re-signed by her after her interlineation of the word "three" over the word "five," then the will must be read as originally written when the will was signed and attested by witnesses; and inasmuch as the word "five" is distinctly legible, the appellant is entitled to the legacy of that amount, viz., $500; Dixon's Appeal, 5 P. F. Smith 427; 1 Redf. on Wills, *324, and cases cited.

As the only requisite to a valid will in Pennsylvania is signature "at the end thereof," it can make no difference when or where the testatrix made the alteration of the legacy in this case. "Under the former English statute, where personalty passed by a will not attested by witnesses, the testator could alter the same at pleasure, without the presence of witnesses." Redf. on Wills 308; Martins *v.* Gardiner, 8 Sim. *73.

No argument nor paper book *contra.*

Mr. Justice STERRETT delivered the opinion of the court, March 30th 1880.

The will of Miss Linnard, consisting of the original paper, dated December 5th 1877, executed in the presence of two subscribing witnesses, and four codicils signed by her but not dated or witnessed, was admitted to probate September 26th 1878, four days after her decease. The original paper was re-signed by the testatrix imme-

diately below and in connection with the attestation clause over date of December 13th 1877. Sometime thereafter she made several changes in her will by drawing a pen transversely across the words creating some of the legacies, and in one instance she substituted a sum different from that originally written. In the seventh item she had given to her nephew, the appellant $500, in trust, to invest and pay the income to Cornelia Purnell during her life, and at her decease the principal to fall into her residuary estate. She altered this bequest by drawing her pen across the word "five" and writing over it the word "three," and also placing the numeral "3" both above and beneath the erased word. In a similar manner she erased a clause in the second item, giving a legacy of $500 to Eugene, son of her nephew, John J. Linnard, and, in the sixth item, a legacy of $200 to another person; and also the second paragraph to the first codicil, together with her signature thereto, in which she had made a different disposition of the $500 legacy stricken out of the second item of the will. After or in connection with the erasure of the paragraph referred to she appears to have completed and signed what now appears as the first codicil. The other codicils, without date or subscribing witnesses, follow in their order. The will as probated exhibits these erasures and alterations; the words erased in the manner above stated are all distinctly legible.

The act of the testatrix in thus striking out the words in the second and sixth items was evidently intended to operate as a cancellation of her will as to these clauses, and was quite sufficient for that purpose; but no such intention can be inferred from the erasure and interlineations in the seventh item. It is very clear that it was not her intention to cancel it, or wholly revoke the legacy. Her object was simply to reduce the amount from $500 to $300; and by holding, as the court did, that, in the absence of proof of re-execution after the alteration was made the substituted legacy could not be sustained her intention was defeated. While the Act of 1833, provides that no will in writing shall be repealed, nor shall any devise or direction therein be altered otherwise than by some other will or codicil in writing, &c., it cannot be doubted that the execution of the second or either of the subsequent codicils, after the alteration, would have the effect of confirming the will as thus altered, and would be a sufficient compliance with the act. A duly executed codicil operates as a republication of the original will so as to make it speak as of the date of the codicil: Coale *v.* Smith, 4 Barr 376; and, it not only operates as a new adoption of the prior will to which it refers, but also as a revocation of an intermediate will: Neff's Appeal, 12 Wright 501. In Wikoff's Appeal, 3 Harris 281, Chief Justice GIBSON, speaking of interlineations, proved to be in the handwriting of a testatrix, says: "The presumption is that they were made at or before the time when

[Linnard's Appeal.]

the will was prepared for the final act." So in the present case it may fairly be presumed that the alterations, admitted to be in the handwriting of Miss Linnard, were made before she appended her signature to the last codicil. If this be so, the testamentary paper as altered, including the codicils, speaks as of that date, and should be regarded as her will, properly executed at that time. It is stated as a fact that the alterations were not made before the original paper was re-signed on December 13th 1877 ; but it does not follow from this that they were not made before the last or some of the preceding codicils were executed. Indeed, the fair inference from the paper itself would seem to be that they were made before the second codicil. As has already been observed, the clause stricken out of the first codicil, before it was completed, refers to the cancelled legacy in the second item of the original paper, so that it may be fairly inferred that this was done before the testatrix signed what now stands as the first codicil; and it is quite probable that the alterations in the original paper were all made at the same time. But however that may be the, presumption is that she made them before she affixed her name to the last codicil. Her signature to that having been duly proved should, in the absence of evidence to the contrary, be regarded as her final act.

Moreover, the probate of the will as we now find it, was an adjudication of its due execution, including, by necessary implication, the republication of the instrument after the alteration in question was made. This established, prima facie at least, the validity of the legacy ; and certainly, in the absence of proof that the alteration was made after the last codicil, the legacy should have been admitted. The item containing it was not stricken out or obliterated. A single word was erased and another substituted by the testatrix, and the item as thus altered, was adjudged to be a constituent part of her will. The clauses that were erased, and thus practically cancelled or striken out of the will, were to be regarded in a very different light. They formed no part of the testamentary paper as probated, and were to be treated as though they had never been there. In the distribution of the estate, the will was before the court for construction, and as a guide in determining who were entitled to participate in the fund ; but the question of its due execution, in whole or in part, did not properly arise in that proceeding. That matter had been adjudicated, and no appeal had been taken. We are of opinion, that the legacy of $300 in question, should have been admitted to participation in the distribution.

Decree reversed and record remitted, with instructions to distribute the fund in accordance with the foregoing opinion. The costs of this appeal to be paid out of the fund for distribution.