## Cromer Estate

*John W. Mentzer, Charles E. Hower, John W. Smarsh*, and *A. J. White Hutton*, for appellants.

*Albert Foster* and *L. H. Wible*, contra.

SHEELY, P. J., June 24, 1949.—This is an appeal from the probate of the will of Emma F. Cromer, deceased. Proponents have filed preliminary objections to contestants' petition for a citation to show cause why the appeal should not be sustained contending that on the facts therein alleged the appeal must be dismissed as a matter of law. The preliminary objections are, in effect, a demurrer and, for the purpose of this argument, admit all facts alleged in the petition.

The controversy concerns only the appointment of an executor. In the will as originally typewritten on March 26, 1941, C. Russel Gracey was appointed as executor. In the will as probated on November 4, 1948, a strip of paper was pasted or glued over the typewritten name of C. Russel Gracey, and the name of H. E. Cromer was written thereon in longhand. A portion of the original will directing that the share of Thomas Cromer should be held in trust was stricken out by lines being drawn through the words, and there was probated as a codicil to the will a writing dated December 5, 1945, and signed by testatrix, in which she referred to this original provision and stated that she had studied about it and now wanted Thomas's share given to him outright. She then stated: "That part has a line drawn through it not to be read I want the one that settles up to make sure he get his he needs it the way he is crippled."

Contestants contend that under these facts the register of wills erred in giving effect to the pasted strip of paper and in probating the will as naming H. E. Cromer as executor, and that he should have probated it as naming C. Russel Gracey as executor. No other facts are alleged contesting the validity of the will. All parties in interest have appeared and are parties to this proceeding.

Assuming that the strip of paper was pasted on the will by testatrix, the first question presented is whether the act of pasting a strip of paper over the name of the executor was, in itself, effective as a revocation of his appointment. We are of the opinion that it was. Section 5 of the Wills Act of April 24, 1947, P. L. 89, provides that no will, or part thereof, can be revoked or altered otherwise than: ". . . (3) Act to the Document. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revocation . . ." This portion of subsection (3) is virtually the same as the provisions of section 20 of the Wills Act of June 7, 1917, P. L. 403, and cases under the former act are applicable.

It is not important whether we denominate the method of revocation as a "cancellation" or as an "obliteration", and the English rule, contended for by contestants, to the effect that an attempted obliteration is ineffective as a revocation unless the original words are rendered illegible or undecipherable is not the law in Pennsylvania. That rule is based upon specific language of the English Wills Act of 1937, which language does not appear in our Wills Act. In the Pennsylvania cases it is apparent that the two words, cancellation and obliteration, are used interchangeably. In Heller Estate, 158 Pa. Superior Ct. 194, 196 (1945) it is said: "Cancellation or obliteration does not mean an effacing so that the letters or words cannot be read: Evan's Appeal, 58 Pa. 238, 244." The court further

said: "The method of revocation by cancellation is largely optional, and is not in itself important."

It has been consistently held in Pennsylvania that the drawing of a line through a word or a sentence of a will is an effective revocation by cancellation: Evans' Appeal, 58 Pa. 238 (1868) ; Linnard's Appeal, 93 Pa. 313 (1880) ; Tomlinson Estate, 133 Pa. 245 (1890) ; Baker's Estate, 331 Pa. 33 (1938). If the drawing of a line through a word is an effective revocation thereof, how can it be contended that the pasting of a strip of paper over the word would be ineffective? In Evans' Appeal, supra, it was said (p. 244) :

"Revocation by cancellation then is not to be understood to mean exclusively drawing crossed lines upon the paper, but it means any act done to it, which, in common understanding, is regarded as cancellation, when done to any other instrument."

The important thing is that the act be "a complete manifestation of an executed intention to repeal". The pasting of the strip of paper over a word fulfills this test.

The second question is whether the act of writing the name of H. E. Cromer upon the pasted strip of paper was a valid appointment of him as executor. If nothing more appeared than this fact it would not have been a valid appointment because of the absence of a signature. In this respect the situation would have been similar to that presented in Baker's Estate, 331 Pa. 33 (1938), where the residuary clause of the original will was crossed out and an unsigned strip of paper, which attempted to dispose of the residuary estate, was pinned to the will. It was held that the strip of paper could not be probated as a codicil because unsigned. The present case is to be distinguished from Baker's Estate, however, by the fact that the strip of paper in this case was permanently affixed to the original will by paste or glue while in that case it was

affixed merely by a pin. By the act of pasting the strip of paper to the surface of the original will it was made a part thereof, and when the name of H. E. Cromer was written thereon the situation presented was the same as though his name had been interlined, which also would have been ineffective as an appointment unless the will were re-executed: White's Estate, 262 Pa. 356, 362 (1918).

However, when an alteration in a will is made prior to the execution of a codicil, the will as altered is, by the codicil, republished and validated, and the will speaks from the date of the codicil. "The presumption is that any alteration, interlineation, or change was made prior to the execution of the codicil or the final act necessary to make such will effective": Hickman's Estate, 308 Pa. 230, 237 (1932); Linnard's Appeal, 93 Pa. 313 (1880). In this case there was a paper admitted to probate as a codicil, but contestants contend that it was not properly probated as a codicil because it made no change in the will since the will was already altered by the cancellation of the trust provision for Thomas Cromer. With this contention we do not agree. Testatrix undoubtedly signed the paper dated December 5, 1945, for the purpose of making certain that Thomas would receive his share outright and, in the absence of testimony showing that the paper was executed after the cancellation of the trust provision, it is a fair inference that the execution of this paper and the cancellation of that provision were simultaneous acts and together constituted the revocation of the trust provision. In the paper she did not state that she had previously drawn a line through the trust provision and that she now wished to explain that act but, on the contrary, she said she had studied about the provision "and now wants his share given to him outright". We think the paper dated December 5, 1945, was properly probated as a codicil.

Contestants further contend that the use of the words "the one that settles up" rather than the name of H. E. Cromer as executor, and without referring to the change of executors, indicates that the codicil was signed prior to the alteration. The use of that expression rather than that of C. Russel Gracey as executor, argues just as strongly that the change was made prior to the execution of the codicil.

If the alterations were the act of testatrix the presumption would apply that they were made prior to the execution of the codicil. The important question then is whether it may be presumed that she pasted the strip of paper on the will and wrote Cromer's name thereon. The burden is upon proponents to establish the validity of a will, and before they can rely upon presumptions they must establish the facts upon which such presumptions may be based. Whether it may be presumed that the alterations were made by testatrix depends upon circumstances which do not appear in this record. We do not know whether the name of H. E. Cromer was written in the handwriting of testatrix, or where the will was kept or found, and whether others than testatrix had access to it. It would be unsafe to indulge in presumptions until these facts were known, and all of the cases applying presumptions are based upon the facts of the particular case. Thus, in Baptist Church v. Robbarts, 2 Pa. 110 (1845) the will was found in a locked secretary of decedent with the seals of the envelope broken and with the signature of testatrix crossed out. The executor had possession of the key to the secretary and knew that it contained the will. It was held that the paper being found in this manner, the legal inference was that testatrix herself mutilated the will and the burden was on proponents to show the contrary. In Linnard's Appeal, 93 Pa. 313 (1880), testatrix (in her handwriting) crossed out the figures indicating the amount of a

legacy and interlined other figures. There were several codicils to the will. It was held that the presumption applied that the alterations in her handwriting were made before the codicils. In Evans' Appeal, 58 Pa. 238, 246 (1868), it was held that where testator had the sole custody of the will, the presumption applied that the tearing was done by him. In Heller Estate, 158 Pa. Superior Ct. 194, 196 (1945), it was held that since the will was found in a wooden box, with other papers, in a cabinet in the home of testatrix, a presumption arose that the act of alleged revocation was that of testatrix. In Stewart's Estate, 149 Pa. 111 (1892), the will was found in testator's safe to which the principal beneficiary had access. A codicil devising property to another had been destroyed. It was held that while the circumstances connected with the destruction of the codicil was suspicious, the law presumes, under the circumstances shown and in the absence of proof to the contrary, that it was done by testator himself. See also Williamson's Estate, 21 D. & C. 673 (1934).

Proponents cannot rely upon the prima facie effect of the probate of the will as altered. It is true that for the purpose of distribution the probate is an adjudication of the due execution of the will including, by necessary implication, the republication of the instrument after the alteration (Linnard's Appeal, 93 Pa. 313, 317 (1880)), but the case before us is an appeal from the probate where the right to probate the will is itself attacked. The right to probate includes the probate of the alteration and the question of the alleged revocation.

There is one remaining question, whether the revocation of the appointment of C. Russel Gracey would be effective even though the attempted substitution of H. E. Cromer might be ineffective. We are of the opinion that revocation of the appointment of Gracey would not be affected by the invalidity of the substituted appointment of Cromer: Martens Estate, 10 Cal. (2d)

395, 74 P. (2d) 238 (1937). In this respect also the case is similar to Baker's Estate, 331 Pa. 33 (1938), in which it was held that the revocation of the residuary clause was complete although the attempted substitution of another clause was defective.

And now, June 24, 1949, for the reasons above stated the preliminary objections to contestants' petition are overruled and proponents are directed to file an answer thereto.