## Frew *et al. versus* Clarke.

1. The following paper was held to be testamentary: "Know all men by these presents, that I, James McCully * * * do order and direct my administrators or executors, in case of my death, to pay to Robert D. Clarke, the sum of $75,000, as a token of my regard for him and to commemorate the long friendship existing between us. Witness my hand and seal this 17th day of April A. D. 1872, James McCully [SEAL]."

2. An instrument in any form, if the obvious purpose is not to take place till after the death of the person making it, operates as a will.

3. In an issue *devisavit vel non*, Clarke was a competent witness, under the Act of April 15th 1869, to prove the execution of the paper.

4. Clarke testified that he saw McCully sign the paper; many other witnesses testified that in their opinion the signature was McCully's: *Held*, sufficiently proved under the Wills Act, April 8th 1833, sect. 6.

5. After such proof the burden of proving fraud or imposition was upon the person alleging it.

6. If McCully signed the instrument, the presumption was that he did so voluntarily and with full knowledge of its contents.

7. As relevant to the question of imposition, evidence might be given by the plaintiff that the decedent was worth $1,500,000, had neither wife nor child and that his relations with plaintiff were intimate.

8. When a witness is called to prove a signature from his knowledge of the signer's writing, the better rule is that he should be cross-examined as to his means of knowledge before testifying to the genuineness of the signature.

9. Bowen *v.* Goranflo, 23 P. F. Smith 357, adhered to; Boyd *v.* Boyd, 16 P. F. Smith 283, distinguished.

November 2d 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1875.

This was a feigned issue under a precept directed by the Register of Wills of Allegheny county to the Court of Common Pleas, to try whether a certain paper presented to him for probate, was the will of James McCully, deceased. The precept was filed in the Common Pleas, April 6th 1874, and the issue was framed with Robert D. Clarke as plaintiff and William Frew and others, heirs and next of kin of James McCully, defendants.

The decedent died March 26th 1873, having been killed by the overturning of a carriage in which he was riding. He left collateral relatives only.

The following is the paper :—

"Know all men by these presents, that I, James McCully, of Pittsburg, Pa., do hereby order and direct my administrators or executors, in case of my death, to pay Robert D. Clarke the sum of $75,000, as a token of my regard for him, and to commemorate the long friendship existing between us.

"Witness my hand and seal this 17th day of April, A. D. 1872.
JAMES McCULLY. [L. S.]"

"$75,000.

[Frew *v.* Clarke.]

The issue was tried April 19th 1875, before Stowe, J.

For the plaintiff J. F. McEnulty testified :—

That he was teller in the American Bank ; that McCully did business at that bank ; that witness had seen him write and was acquainted with his handwriting. The paper in controversy was then shown to the witness and plaintiff proposed to ask him " Whether in his opinion this signature, ' James McCully,' is or is not the signature of McCully, from his (the witness') knowledge of his handwriting."

Defendants objected for the reason that the defendants claim to cross-examine the witness as to the means of his knowledge, when acquired, how long he has been acquainted with the handwriting of James McCully, and this for the purpose of having the court pass upon the question as to the knowledge that the witness has upon the question in relation to which he is about to give an opinion.

The objection was overruled and a bill of exceptions sealed for defendants.

Witness was then asked, from his knowledge of James McCully's handwriting, to state whether or not that is his, in witness' opinion ?

He answered, " Well, I believe it is."

On cross-examination witness said, that he had seen decedent signing his name in a dividend book at the American Bank two or three times ; he never saw him write anything but his name ; besides this, witness had handled his checks ; he could not say that his opinion was founded on seeing him write just those three times ; he believed he would be able to say it was decedent's signature from those three times ; seeing any writing three times, he believed he could say of any signature whether it was genuine or not ; decedent had paid the checks that witness handled at the bank.

The plaintiff was then offered to testify.

The defendants objected to his competency on the ground that he was the plaintiff and a party in interest. The court admitted him to testify and sealed a bill of exceptions for the defendants.

He then testified that he saw the decedent sign the paper on the day of its date, about nine or ten o'clock in the morning.

On cross-examination he said that the body of the paper was in his own writing ; he made the seal on the paper ; it was signed in the Diamond Savings Bank ; there were clerks in the bank when it was signed ; witness had gone by appointment to meet decedent that morning to sign the paper ; the appointment had been made three days before ; he gave the paper to decedent that morning to read, and decedent read it. Witness had copied the paper from one furnished him which had been prepared under legal advice ; at the time the paper from which he copied was prepared, he was advised by counsel that it would operate as a will ; decedent was about seventy-one years old when he signed the paper ; the paper had

[Frew *v.* Clarke.]

been in plaintiff's possession from that time up to the time it was presented to the register for the probate.

The plaintiff then offered the paper in evidence.

Defendants objected to the offer for the following reasons :—

1. The said paper being in the handwriting of Robert D. Clarke, who is the plaintiff and sole legatee and only person alleged to have seen James McCully sign his name thereto, the same has not been proved as required by law, by the oaths of two witnesses.

2. The said paper being under seal, and delivered to the plaintiff by James McCully when signed by him, the same was by reason of said delivery irrevocable and is not in law a testamentary paper.

3. The said paper is not on its face, as matter of law, more than an attempt to make a gift and is invalid.

4. The evidence shows that it is in law an imperfect paper, and the burden is upon the plaintiff to show by clear and convincing evidence that James McCully intended it to operate as a testamentary paper, and all the facts connected with it, the plaintiff must show affirmatively before giving it in evidence.

The objections were overruled and a bill of exceptions sealed for the defendants.

The paper was read to the jury and the plaintiff rested.

For defendants, Robert Woods, Esq., testified, that he had for a long time been counsel for McCully, had seen him sign very many papers and knew his signature well ; in the opinion of witness the signature to the paper was not decedent's.

A number of witnesses testified, that in their opinion the signature to the paper was not that of the decedent.

There was evidence also that the decedent frequently before signing an instrument wrote his name on other pieces of paper and let them lie about without destroying them ; there was some evidence also that the faculties of decedent were not as bright as they had been formerly ; that the plaintiff was not a relation to him and was not particularly intimate with him ; and that decedent was under no obligation to plaintiff.

In rebuttal a large number of witnesses testified that in their judgment the signature to the paper was in the handwriting of the decedent.

The plaintiff testified, that he resided in Pittsburg; that decedent took much interest in plaintiff's business and had for a number of years endorsed notes to a large amount for his accommodation. Four or five months before the date of the paper, the plaintiff and decedent casually met ; decedent inquired how he was getting on with his business, and voluntarily said that he was getting old and could not live long; that he was on a good deal of plaintiff's paper and wished to make such provision for plaintiff that in case of decedent's death plaintiff would not need to have another en-

dorser.   About a month afterwards at another interview decedent asked plaintiff if he "had got that paper ready," plaintiff said he did not understand about getting any paper ready ; and said he would get one ready ; decedent at that time repeated the conversation they had previously had.   Plaintiff went to Edgar Cowan, Esq., at Greensburg, Westmoreland county ; Mr. Cowan had been his counsel previously ; plaintiff told him his conversation with decedent ; after he had so done, Mr. Cowan prepared a paper for him, the one propounded for probate being copied from it, except the amount ; a few days afterwards he saw decedent, who again referred to the matter ; he showed him the paper drawn by Mr. Cowan, which had the names cut out for fear he might lose it and the names be exposed ; decedent told him to have it ready on the succeeding Wednesday, four days afterwards, and told witness to put in $75,000.   On the Wednesday appointed they met ; decedent read it, signed it, and handed it to plaintiff.

Plaintiff proposed to show the value of the estate left by James McCully, and that the estate at the time of his death, was of the value of about a million and a half of dollars, the purpose of the offer being to rebut the allegations of fraud and imposition practised upon Mr. McCully in the matter of the testamentary paper in controversy, and for the purpose of showing the relation that the testamentary gift to Robert D. Clarke bears to his entire estate.

This was objected to by defendants as incompetent and irrelevant.

The objection was overruled and a bill of exceptions sealed for defendants.

There was evidence that the decedent was a shrewd man, that his health and mind had been sound till the time of the accident ; that he was a man of strong attachments and dislikes.

There was very much additional evidence on each side ; relating principally to the questions of fraud and imposition on the decedent in the execution of the paper.

The following are points of the plaintiff with their answers :—

1. The writing of April 17th 1872, in controversy in this case, is a testamentary writing.

2. Subscribing witnesses to a testamentary writing are not necessary to its validity.

These points were affirmed.

4. There is no evidence in this case to warrant the jury in finding that the signature of James McCully to the paper in controversy was procured by fraud or imposition ; and there is no evidence in the case of want of testamentary capacity in James McCully.

Answer: "This point is double and involves two distinct propositions.   The first is refused.   The second is affirmed."

The defendants' fourth point and its answer were :—

It being shown by the evidence clearly, and not controverted by the defendants, that the body of the alleged testamentary paper is in the handwriting of the plaintiff; that he was not related by blood to James McCully ; that it is without subscribing witnesses; that he is the sole person to be benefited thereby ; that it was produced by the plaintiff after Mr. Cully's death, and that no witnesses other than the said plaintiff are claimed to have seen said McCully sign said paper, such admitted facts raise a *strong legal presumption* against the genuineness of the signature of James McCully to said paper, and that the alleged testamentary paper was not the voluntary act of said McCully, it lies upon the plaintiff to show by clear and satisfactory evidence that the said James McCully signed said paper, and at the time of so doing had knowledge of its contents, and intended it to be valid and operative as a will.

Answer : " This point is refused as it stands.   The facts alleged do not raise a strong legal presumption, nor any legal presumption against the genuineness of the instrument in suit, but they do present such a case as is calculated to excite suspicion, and makes it the duty of the jury to be vigilant and careful in examining the evidence in support of the genuineness of the instrument.

" Where a party writes or prepares a will under which he takes a benefit, that is a circumstance which ought generally, and in connection with the other facts stated in this point, in *this case,* undoubtedly calls upon the jury to be vigilant and jealous in examining the evidence in support of this paper.   This, however, is a mere circumstance of suspicion demanding vigilant care and circumspection in investigating the case, so that they may not recognise the instrument as the will of James McCully, without the same has been fairly and satisfactorily established by the evidence."

The court charged :—

[" The first question that arises in this case is : is the signature to this paper the actual writing of James McCully ?   Did he write the name James McCully on this paper, or did some one else write it ?   Upon this question the burden of proof is upon the plaintiff. That is to say—the plaintiff must satisfy you that such is the case. Otherwise he cannot recover in this suit.   No will is valid in Pennsylvania (except in certain cases of which it is not pretended this is one), unless in writing, signed at the end thereof and proved by at least two witnesses.   It is not necessary, as we have already stated to you, that those two or more witnesses should have seen the deceased write his name or heard him acknowledge that he had written it.   It may be proven by parties who are able to swear that the signature is in their opinion the genuine writing of the testator, as has been done in this case.]

[Frew *v.* Clarke.]

" It is urged, however, by counsel for plaintiff, that he having called two witnesses (the plaintiff, who says he saw McCully write the name, and another who swears that in his opinion the signature is genuine), who have testified to the signature as that of James McCully, this alone makes out a primâ facie case, which casts the burden of proof to the contrary on the defendants and makes it their duty to overcome it by their testimony, otherwise it is your duty to find in favor of the validity of the paper in question.

" This we do not recognise as law. It is true that the evidence of those two witnesses made a case under which it was our duty to submit the alleged will to the jury, and under which, if the defendants had offered no proof, the jury should find for plaintiff in this action. But where the defendants, as they did here, offer evidence tending to show that the signature is not genuine, and rebutting the allegations of plaintiff upon that question, the cause goes to the jury upon all the evidence submitted to it, and it is incumbent upon the plaintiff, under all the evidence upon the genuineness of the signature, to satisfy you reasonably and fairly that the signature is genuine.

" The burden of the proof as to this, is upon the plaintiff from first to last, and if he has failed thus to satisfy you under all the evidence, your verdict should be for the defendants.

[" But in case you should be satisfied that James McCully did actually sign his name to the paper set up here as his will, then the rule changes and the burden of proof is cast upon the defendants, and it is their duty to satisfy you that fraud or imposition was practised upon McCully, and that he signed the paper in ignorance of its contents, or that somebody wrote the body of the instrument above the name of McCully without his knowledge and consent.

" The law will not presume this. Indeed the law under this state of facts presumes the other way, in favor of honesty and fair dealing, where an instrument, deed or will, is shown to have been signed by a person, and no other proof is adduced. The law presumes without more, that it was signed voluntarily and with knowledge of its contents. And so where a paper bears no sufficient evidence of fraud upon its face, but presents just such an appearance as it would naturally have, if everything were done just as it is alleged by a party that it was done, and the fact of the signature being genuine is established, the legal presumption of the genuineness and validity of the whole paper as set out arises, and before a jury can properly find the other way the evidence in the cause must fairly lead it to that conclusion, and if it fails to do so, their verdict should be in favor of the validity of the instrument.

" To conclude, then, the first question is, did James McCully

[Frew *v.* Clarke.]

actually write the name James McCully on the paper which is now claimed to be his will ?

" As to this, the law casts the burden of proof upon the plaintiff, who must satisfy the conscience of the jury that such is the fact under all the evidence in the case.

" If you are not fairly satisfied as to this, then your verdict should be for defendants, but if you are, the question arises, did James McCully sign the paper after it was written out in ignorance of its contents, or was the instrument written over the signature of McCully by some one without his knowledge or consent, as alleged by defendants ?

" Upon the second question the law requires the defendants to adduce evidence which shall fairly satisfy you that their allegations in this respect are true, otherwise your verdict should be for plaintiff."]

The verdict was for the plaintiff.

The defendants took a writ of error : they assigned twenty errors.

1, 2. The admission of J. McEnulty to testify as to decedent's signature without permitting defendants first to cross-examine him as to his means of knowledge.

3. Allowing Clarke the plaintiff to testify.

5. Admitting the paper in dispute in evidence.

10. Admitting evidence of the value of decedent's estate.

13, 14, 16. The answers to the plaintiff's first, second and third points.

17. The answer to the defendants' point.

18, 19. The parts of the charge in brackets.

20. Submitting to the jury to find whether, under all the evidence, Mr. McCully executed the paper in suit as a testamentary paper, there being in law no sufficient proof of it as required by the Wills Act of 1833, and no sufficient evidence upon which the jury could find for the plaintiff.

*J. Dalzell, J. H. Hampton* and *T. M. Marshall,* for plaintiffs in error.—The paper in evidence as a will is an imperfect paper ; the presumption is against such a paper operating as testamentary : 1 Redf. on Wills 170, sect. 7. It could not be *donatio causa mortis* because not made *in periculo mortis :* Michener *v.* Dale, 11 Harris 59 ; Harris *v.* Clark, 3 Comstock 93. This paper cannot be treated as testamentary : Parrish *v.* Stone, 14 Pick. 198 ; Holly *v.* Adams, 16 Verm. 206 ; Williams on Personal Prop. 421–24 ; Plumstead's Appeal, 4 S. & R. 545 ; Grant *v.* Levan, 4 Barr 424 ; Stein *v.* North, 3 Yeates 324 ; Shield *v.* Irwin, Id. 389 ; Murry *v.* Murry, 6 Watts 353 ; Patterson *v.* Rickabaugh, 21 P. F. Smith 454. The paper at most was but an obligation to pay money : Mack's Appeal, 18 P. F. Smith 233. If it had testamentary

[Frew v. Clarke.]

quality, that was destroyed by delivery: Trough's Estate, 25 P. F. Smith 115; Campbell's Estate, 7 Barr 100; Withers v. Weaver, 10 Id. 391; Kidder v. Kidder, 9 Casey 268; Lisenbigler v. Gourley, 6 P. F. Smith 166; Pringle v. Pringle, 9 Id. 281; Zimmerman v. Streaper, 25 P. F. Smith 147. The paper if testamentary was not legally proved under the Wills Act, April 8th 1833, Pamph. L. 249, 2 Br. Purd. 1474; Grabill v. Barr, 5 Barr 441. Granting the testimony of Clarke that he saw the decedent sign the paper to be equivalent to the testimony of a subscribing witness, there must be facts and circumstances equivalent to another witness before it could be given in evidence: Carson's Appeal, 9 P. F. Smith 493; Hock v. Hock, 6 S. & R. 47. When the party who is to receive a large pecuniary benefit draws the will, keeps it in his possession after it is signed and is the only witness to prove its execution, it requires clear proof that the testator had actual knowledge of the contents: Boyd v. Boyd, 16 P. F. Smith 283. Clarke was not a competent witness. An object to be preserved by the statute was equality in the parties in interest. If Clarke be a witness this equality would be destroyed: Karns v. Tanner, 16 P. F. Smith 297; McBride's Appeal, 22 Id. 481. Whether the paper was made with the design to have a testamentary effect was for the jury although by legal construction, the paper was testamentary: Carson's Appeal, supra. The evidence of defendants overthrew the primâ facie case of plaintiff and the burden was then on him to prove by two witnesses that the decedent signed the paper with a knowledge of its contents: Mackensie v. Yeo, 3 Curteis 125 (1 English Eccles. Rep. 396).

M. W. Acheson, for defendant in error.—A will is an instrument which is in its own nature ambulatory and revocable; these qualities form the characteristics of wills: 1 Jarm. on Wills 11, note 1. If it is the intention of decedent that it should operate after his death it is testamentary: Thorold v. Thorold, 1 Phillimore 1 (1 English Eccles. Rep. 11); Habergham v. Vincent, 2 Ves. Jr. 204; Morrell v. Dickey, 1 Johns. Ch. 153; Hunt v. Hunt, 4 N. H. 434; 1 Redfield on Wills 272; Turner v. Scott, 1 P. F. Smith 126; Frederick's Appeal, 2 Id. 338; Rose v. Quick, 6 Casey 225; Patterson v. English, 21 P. F. Smith 458. Plaintiff was competent under Act of 15th April 1869: Pamph. L. 301, 1 Br. Purd. 624, pl. 16; Bowen v. Goranflo, 23 P. F. Smith 357.

Mr. Justice MERCUR delivered the opinion of the court, January 6th 1876.

This was a feigned issue to try the genuineness and testamentary character of a written instrument, of which the following is a copy, to wit :—

30 P. F. SMITH—12

[Frew *v.* Clarke.]

"Know all men by these presents, that I, James McCully, of Pittsburg, Pa., do order and direct my administrators or executors, in case of my death, to pay Robert D. Clarke, the sum of seventy-five thousand dollars, as a token of my regard for him, and to commemorate the long friendship existing between us.

Witness my hand and seal this 17th day of April, A. D. 1872.
$75,000.                                    JAMES McCULLY.  [L. S.]"

Twenty errors have been assigned, yet all the substantial matters may be considered in answering the following questions:—

1. Is the instrument of a testamentary character?

2. Is the signature thereto in the handwriting of James McCully?

3. Was his signature obtained through fraud or imposition, or in his ignorance of the contents of the instrument?

The first is a question of law, the others questions of facts.

1. A will is defined to be the legal declaration of a man's intentions, which he wills to be performed after his death: 2 Black. Com. 500; Bouv. Law Dic.; 1 Jarman on Wills 11. An instrument in any form, whether a deed poll or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a will: Habergham *v.* Vincent, 2 Ves. Jr. 204. It may be by an endorsement on a note: Hunt *v.* Hunt, 4 N. H. 434; or by letter: Morell *v.* Dickey, 1 Johns. Ch. 153. Whatever be the form of the instrument, if it vests no present interest, but only directs what is to be done after the death of the maker, it is testamentary: Turner *et al. v.* Scott, 1 P. F. Smith 126. The essence of the definition is, that it is a disposition to take effect after death: Redfield on Wills 5; Turner *v.* Scott, *supra.* Nor does it matter that the person intended to make a note instead of a will. If he used language which the law holds to be testamentary, his intention is to be gathered from the legal import of the words he employed: Id. No form of words is necessary to make a valid will. The form of the instrument is immaterial, if its substance is testamentary: Patterson *v.* English, 21 P. F. Smith 458; see also Rose *v.* Quick, 6 Casey 225; Frederick's Appeal, 2 P. F. Smith 338.

This instrument is in writing. It is signed at the end thereof. It contains no admission of indebtedness. It furnishes no evidence of a debt. It contains no promise to pay. It vested no present interest. It was not to take effect until after the death of McCully. In the meantime he could revoke it at his pleasure. It therefore possessed all the essential characteristics of a will, and was undoubtedly testamentary in its character.

2. The 6th section of the Act of 8th April 1833, requires that a will "in all cases shall be proved by the oaths or affirmations of two or more competent witnesses." The act does not require them to be subscribing witnesses: Jones *v.* Murphy, 8 W. & S. 295;

[Frew v. Clarke.]

Carson's Appeal, 9 P. F. Smith 493. Although the body of the will be not in the handwriting of the testator: Weigel v. Weigel, 5 Watts 486; Ginder v. Farnum, 10 Barr 98; Derr v. Greenwalt, 26 P. F. Smith 254. It may be proved then by competent witnesses, two or more in number. In this case, some fifteen witnesses testified to the authenticity of McCully's signature. Among the number was Robert D. Clarke, the defendant in error. It is claimed that he was incompetent. If so, it must be on the ground of either interest or policy. The first section of the Act of 15th April 1869, declares " no interest or policy of law shall exclude a party or person from being a witness in any civil proceeding." The proviso to the section, after wholly excluding from the operation of the act several classes of cases, declares, *inter alia*, the act shall apply in "issues and inquiries *devisavit vel non*." This was an issue *devisavit vel non*. It was the very question in controversy. It is then just the case in which the Act of Assembly says Clarke is a competent witness, although a party and interested. To deny this, is to disregard the specific terms of the act, and to refuse to give effect to the language cited. It was, therefore, held in Bowen v. Goranflo, 23 P. F. Smith 357, that one who was a party to the issue and both executor and devisee under the will in controversy, was a competent witness.

A careful review of the act confirms us in the correctness of the conclusion at which we then arrived. We do not see how effect can otherwise be given to the clause in question. It is claimed, however, that this construction of the statute will open the door to fraud and perjury. It may be so. It is possible that permitting parties to testify in any case has caused much perjury. The good and the bad in this world are very much blended. Many an act of the legislature may not produce unalloyed good, yet we must give effect to its provisions. If the evil preponderates in obeying its mandates, the corrective power is lodged in the legislature to modify or repeal what they have enacted. We therefore see no error in permitting Clarke to testify. The evidence in favor of the signature being McCully's, was most ample to submit to the jury. On that testimony they had a right to find, as they did find, the signature to be genuine.

3. The learned judge said to the jury there was no evidence in the case of want of testamentary capacity in James McCully. A careful examination of the testimony leads us to the same conclusion. He appears to have been a man of plain tastes and of economical habits. He was intelligent, careful and sagacious. Industrious and self-controlling, he had the ability to retain, as well as to make property. No foolish bargains characterized his conduct. He had a vigorous and well-balanced mind. His testamentary capacity was very clear.

The question whether any fraud or imposition was practised on

McCully, or that he signed the paper in ignorance of its contents, or that some one wrote the body of the instrument over his signature and without his knowledge and consent, were all fairly submitted to the jury. The burden of proving these allegations rested on the party alleging them. If he signed the instrument, the presumption is that he did so voluntarily with a full knowledge of its contents. It is claimed, however, that when the principal beneficiary under a will is a stranger, having no claims from relationship, direct proof is not required of undue influence in procuring the making of the will. In support of this view, Boyd *v.* Boyd, 16 P. F. Smith 283, is cited. That case, however, is predicated of general evidence of power exercised over a testator of comparatively weak mind. If the mental capacity of McCully had been impaired; if he had become weak from age or bodily infirmity, although not to such an extent as to destroy his testamentary capacity, it might have shifted the burden of proof, and required the defendant in error to negative, by evidence, a presumption of undue influence. It is shown, however, that McCully's mental capacity was not impaired. He had not become weak through age, bodily infirmity or otherwise. His mind was clear, strong and discriminating. His judgment was good and self-reliant.

It is further urged that Clarke occupied a semi-confidential relation to the testator, growing out of the fact that the body of the will is in the handwriting of Clarke; that this is a suspicious circumstance requiring the fullest explanation. Granted. Yet if Clarke is believed, a full explanation was given. He gave a minute statement of all the circumstances under which the will was prepared.

The court said, substantially, to the jury, that while the facts proved did not create any legal presumption against the genuineness of the instrument, yet they were calculated to excite suspicion, and made it their duty to be vigilant and careful in examining the evidence in support of the genuineness of the instrument, and not to recognise it as McCully's will, unless it had been fairly and satisfactorily established by the evidence. The jury were thus cautioned and warned. Cautioned to examine carefully all the evidence casting any suspicion on the will, and warned against disregarding those facts on insufficient evidence. As bearing on the question of the absence of imposition on the testator, it was relevant to show that he possessed a large estate, and died worth from one and a quarter to one and a half millions of dollars ; that he had neither wife nor child, and that his relations with Clarke were of an intimate, business and social character. In the absence of persons having strong natural claims on McCully's bounty, he might more reasonably have donated a small portion of his large estate " to commemorate the long friendship existing between them."

When a witness is called to prove a signature from his know-

[Frew *v.* Clarke.]

ledge of the handwriting of the alleged signer, and not from having seen the particular signature written, we think the better rule is to permit the witness to be cross-examined as to his means of knowledge before he testifies as to the genuineness of the signature in question. The court departed from this rule in the case covered by the first assignment, but the plaintiffs in error sustained no injury thereby. The subsequent cross-examination showed the witness to be fully qualified by his previous knowledge to state his belief in the authenticity of the signature.

We think the learned judge ruled all the legal questions substantially correctly, and we discover no good reason for disturbing the judgment, therefore                  Judgment affirmed.[1]

AGNEW, C. J.—I doubt as to the question of interpretation of the Act of 1869, as decided in the case of Goranflo.

Mr. Justice PAXSON dissented and filed a dissenting opinion, in which Mr. Justice SHARSWOOD concurred.

---

[1] This case was re-affirmed by a divided court after re-argument at Pittsburg at October Term 1876 ; Mr. Justice WILLIAMS being sick and absent.