## Deist Estate

*Archibald M. Matthews*, for appellants.

*Shaver & Heckman*, for appellee.

LANSBERRY, P. J., November 3, 1950.—In this or-phans' court proceeding the facts are not in dispute nor are they complicated. From the pleadings and testi-

mony it appears that on or about January 22, 1948, Joseph M. Deist opened a savings account with the Peoples State Bank, Jennerstown, Pa., being account no. 2262. At that time he executed a signature card on which was typed his name, "Savings Account" and account number at two separate places and on which signature card was typed "In case of Death this account is payable to Annie Laurie Deist"; immediately beneath the quoted statement he placed his signature in ink, Joseph M. Deist. Thereafter and up to December 1, 1949, six deposits were made into this account, of which four were interest credits, and during the same period of time four withdrawals were made; on April 4, 1950, the balance in the account was $25,-293.27.

During the afternoon of April 4, 1950, Robert W. Bittner, cashier of the Peoples State Bank, Jennerstown, Pa., received a telephone call from Joseph M. Deist, asking the cashier "to withdraw the amount of money that was in his savings account, place it in an envelope and keep the money in (his) possession for him." The cashier, in that telephone conversation, told the depositor "it was impossible for me (the cashier) to make a withdrawal on his account, but if he wanted to make a withdrawal he would have to come to the bank and withdraw the money", to which Joseph M. Deist replied that he couldn't come to the bank then but would see him the following morning at eight o'clock. It further appears that Joseph M. Deist told the cashier he was having some difficulties, that a warrant had been issued for him and he thought the account might be attached by the sheriff, which he did not want to happen. The difficulties to which the depositor referred were actually domestic difficulties, but it is not apparent that the type of difficulties to which Mr. Deist referred in the telephone conversation were communicated to the cashier. Several hours following

the telephone conversation Joseph M. Deist went to Somerset, Pa., where he was fatally wounded and died as a result thereof within a few minutes.

Joseph M. Deist was survived by his widow, Annie Laurie Deist; two brothers, Benjamin F. Deist and John Lester Deist, and a sister, Myrtle Deist Woy.

Letters of administration were granted to the widow, Annie Laurie Deist, on April 10, 1950, and on April 14, 1950, an inventory and appraisement was filed in which was included for calculation of the transfer inheritance tax only, the deposit in the Peoples State Bank of Jennerstown, Pa. The appraisement showed other personal assets in the amount of $37,497.80 and real estate in the amount of $1,575.

On April 17, 1950, upon consideration of the petition of Annie Laurie Deist, an order was entered awarding petitioner as the surviving spouse the $10,-000 allotment provided by section 2(3) of the Intestate Act of 1947.

On May 5, 1950, the signature card stapled to the pass book was exhibited to the Register of Wills of Somerset County, the signature of Joseph M. Deist on the signature card duly authenticated and proven to be in his handwriting and this signature card and pass book admitted to probate as and for a testamentary writing of Joseph M. Deist, deceased.

Following the filing of the inventory and appraisement, on April 24, 1950, the two brothers and sister of decedent filed exceptions to the appraisement, their exception being deduction of the above savings account as an asset of the estate. Answer was filed to this exception, averring that the bank account as set up was testamentary in character and by the terms thereof passed to the widow, Annie Laurie Deist, since no revocation of this testamentary disposition of the bank account had been made.

Subsequently, on April 27, 1950, the two brothers and sister filed exceptions to the allowance of the surviving spouse's allotment, averring that "said provision attached to the savings account was in law and effect a testamentary bequest to Annie Laurie Deist, widow of Joseph M. Deist", and therefore contending that "under the Intestate Act of 1947, the deceased being testate as to his widow, Annie Laurie Deist, she is not entitled to the spouse's exemption of $10,000". An answer to these exceptions was duly filed.

Thereafter, on June 10, 1950, the two brothers and sister of decedent perfected an appeal from the probate of the signature card and pass book as the last will and testament of decedent and the granting of letters thereon averring that the probated writing, if it was a will, was revoked by Joseph M. Deist on April 4, 1950 (by virtue of his telephone conversation with the bank cashier), that the alleged testamentary writing is void as a will because it is not dated and that the grant of letters by the register is illegal because they have not been advertised and no notice was given to exceptants, three of the heirs at law of decedent, of the probate of the testamentary writing.

The exceptions to the appraisement, exceptions to the allowance of the spouse's allotment and the appeal from the probate of the testamentary writing came on for hearing on June 14, 1950, at which time testimony was taken. Thereafter, counsel for the administratrix and executrix submitted a written brief, and counsel for exceptants cited the single reported case of Martin Estate, 365 Pa. 280, as authority for their respective positions.

The fundamental question presented by this record is whether the combined signature card and pass book may be probated as a testamentary writing.

Our courts have repeatedly and consistently held that the form of the will or testamentary writing is

immaterial if its substance is testamentary. The test is the intention of decedent to make a disposition of property upon his death. No form of words can be said to be necessary to make a will, but rather as stated and defined by Blackstone, Book 2, page 499, a will is "the legal declaration of a man's intentions, which he wills to be performed after his death".

A reference to a few of the cases is sufficient authority for our present purposes. In the celebrated and oft quoted case of Turner v. Scott, 51 Pa. 126, Mr. Chief Justice Woodward said at page 134, after reviewing the English authorities:

"The doctrine of the cases is, that whatever the form of the instrument, if it vest no present interest, but only appoints what is to be done after the death of the maker, it is a testamentary instrument. It signifies nothing that the parties meant to make a deed instead of a will. If they have used language which the law holds to be testamentary, their intention is to be gathered from the legal import of the words they have employed, for all parties must be judged by the legal meaning of their words."

Mr. Justice Mercur in Frew v. Clarke, 80 Pa. 170, at page 178, after reviewing the authorities, said:

"This instrument is in writing. It is signed at the end thereof. It contains no admission of indebtedness. It furnishes no evidence of a debt. It contains no promise to pay. It vested no present interest. It was not to take effect until after the death of McCully. In the meantime he could revoke it at his pleasure. It therefore possessed all of the essential characteristics of a will, and was undoubtedly testamentary in its character."

The rather recent case of Onofrey v. Wolliver, 351 Pa. 18, is to the same effect, wherein Justice Allen Stearne said, inter alia:

"It is well settled that when an interest becomes effective only after *death*, the document creating the interest, whether bank account, deed, check, note or other paper, is regarded as *testamentary in character*, and must be treated as such."

Other cases which reiterate this principle of law include Shoemaker's Estate, 47 D. & C. 337; Lewis' Estate, 139 Pa. Superior Ct. 83; Mardis v. Steen, 293 Pa. 13; Zell's Estate, 329 Pa. 312; Gibson's Estate, 128 Pa. Superior Ct. 44, and Glass' Estate, 331 Pa. 561.

In the case of Waltman et al. v. The Germantown Trust Company, 92 Pa. Superior Ct. 480, it appeared that decedent during his lifetime opened a savings account in the trust company savings department, executed a signature card agreeing to be bound by the regulations of the trust company, and on the reverse side of the signature card signed the following endorsement:

"April 21, 1924, in the event of my death I hereby authorize the Germantown Trust Company to pay over to my wife, Margaret B. Mayer, the balance of moneys standing in this my account. John B. Mayer, Witness, Joseph Bedford, Jr."

The court rejected the theory of a gift because of want of delivery, so essential thereto, and declared the writing endorsed on the signature card testamentary in character, saying:

"As the written direction of the depositor was a disposition of the fund to take effect after his death, it was testamentary in character. . . ." The court, however, was compelled to the conclusion that it was null and void because of a later will which definitely revoked all previous documents having a testamentary quality. That case is analogous to the case at bar on the principle of the writing being testamentary in character.

A careful scrutiny and examination of the writing here in the light of the principles enunciated in the foregoing cases compels the conclusion that it was the clear intent of Joseph M. Deist that upon his death the account as of that time should pass to his widow; during his lifetime admittedly he exercised and maintained full control over the account; admittedly he signed the dispository writing at the end thereof; that writing vested no present interest in his wife nor any other person; it contained neither evidence of an indebtedness nor a promise to pay an amount to his wife nor any other person; it was, in the most simple language, the disposition of the account balance upon his demise. It was a testamentary disposition of property and as such admissible to probate.

This writing possessing all of the elements of a testamentary disposition on its face, it is incumbent upon the courts to so declare as a question of law (Frew v. Clarke, supra), and to give effect thereto: Zell's Estate, supra.

It is suggested, if not actually contended, that the writing purported to be a will is defective for the want of a date thereon. The suggestion is obviously untenable. If there was any doubt, however, the question is easily answered by reference to the pass book which gives the date of the original deposit, to wit, January 22, 1948, and the testimony that the signature card with the testamentary writing thereon was signed upon opening of the account at the time of the initial deposit. The other suggestion, again if not actually a contention upon the part of exceptants, that the probate of this testamentary writing is invalid for the reason that it was not so advertised and no notice thereof given is not germane to the issue but likewise obviously untenable.

Exceptants' contention that the testamentary writing was revoked by decedent prior to his death, although not difficult of answer, merits consideration.

Section 5 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.1, clearly sets forth the three methods of revoking a will, to wit, by some other will or codicil in writing; by some other writing declaring the same, executed and proved in the manner required of wills, or, by an overt act with intent and for the purpose of revocation by testator himself or another in his presence and at his express direction. Such has been the statutory law of this Commonwealth since the Act of April 8, 1833, P. L. 249 (except as applied to nuncupative wills revoking a written will), and many have been the cases construing and applying this law. Except, as prescribed by statute, there is no way to revoke a written will: Williams' Estate, 336 Pa. 235.

The two elements necessary to a legal revocation of the will are the intention of testator to revoke (Ford's Estate, 301 Pa. 183), and the overt act to accomplish and realize that intent: Williams' Estate, supra, and Evans' Appeal, 58 Pa. 238. Not only must there be the present intent to revoke the testamentary writing, but the overt act must be such as to intend accomplishment of a present revocation rather than a contemplated future change of that instrument or writing: Evans' Appeal, supra. In the instant case obviously Joseph M. Deist did not comply with the prescribed methods of revocation of this writing in his lifetime. Assuming (but not admitting) the intent to revoke was present in his mind during the late afternoon of April 4th, Mr. Deist's statement of direction to the bank cashier to withdraw the fund cannot in any manner be construed an act to accomplish that intent. He himself did not consider his expressed desire of sufficient importance to go to the bank and withdraw the fund forthwith, notwithstanding the cashier indicated he would await his appearance at the bank that day for Mr. Diest's appearance. Moreover, there is nothing in his statement to the cashier that he intended that

his wife should not have the account balance upon his demise; we may speculate as to that but it amounts to speculation only; the compelling reason which gave rise to his direction to the bank cashier was to avoid the fund being attached by the sheriff; whether there was any foundation for that fear is here immaterial. Both elements of the testamentary writing—intent to revoke and an act of revocation—being absent in this case, it cannot be said that Joseph M. Deist revoked the testamentary writing executed by him on the bank signature card.

Having concluded that the testamentary writing is valid as such and is therefore a testamentary disposition of the bank savings deposit, it follows that there is a partial intestacy in this estate. The second question then presented by this record may be stated as follows: Where a decedent dies testate as to a portion of his personal estate, which portion passes to his widow as the legatee under the testamentary writing, and dies intestate as to a portion of his personal estate and all of his real estate, is the surviving spouse entitled to take the spouse's allotment provided by section 2(3) of the Intestate Act of April 24, 1947, P. L. 80, 20 PS §1.1? We think the question must be answered in the affirmative.

Section 1 of the Intestate Act of 1947 specifically provides, inter alia, that the act shall apply to the descent of property real and personal, "not disposed of by will or otherwise" and section 16 of the act specifically provides that the act is "intended as an entire and complete system regulating the descent of the real and personal estates of persons dying wholly or partially intestate . . .". The act applies to property undisposed of in cases of partial intestacy in the same manner as it applies to all of decedent's property in cases of total intestacy. The testamentary writing in this es-

tate comprehends and applies only to the bank savings account, and as to all other personal property and all his real estate, Joseph M. Deist died intestate.

In Bregy, Intestate, Wills and Estates Act of 1947, discussing partial intestacy, the law is correctly referred to at page 60 in the following language:

"Where the spouse is the beneficiary under the incomplete will in such a case, he will sometimes take the entire estate due to the fact that in the absence of issue he will be entitled to the first $10,000 of the undisposed of property. As the court emphasized in Schillo's Estate, 64 Pa. Super. 85, 89 (1916), he is in no sense taking against the will in this situation. Hence, he takes both his legacy and his full intestate share."

In the same reference at page 112 is found:

". . . the full intestate share, including the allowance in proper cases, may be claimed by the spouse in cases of partial intestacy. Here again, the spouse is entitled to the first $10,000 of property passing under this act, even though he might also receive other property under the incomplete will."

Martin Estate, 365 Pa. 280, relied upon by exceptants, is not applicable to the estate here for the obvious reason that Martin, the surviving spouse, elected to take against his deceased wife's will; admittedly there was in Martin Estate a partial intestacy as here but there is no election to take against the will here as there was in Martin Estate; consequently the Wills Act of 1947, sec. 8, is not applicable to this estate. In Martin Estate the court said:

"The 1947 Intestate Act does not contain a provision covering such an election, but that situation is clearly and specifically covered by the 1947 Wills Act. The 1947 Wills Act deals not only with property passing under a will, but also deals clearly and specifically with the disposition of all of the property of a decedent

who dies wholly or partially testate, in the event that the surviving spouse elects to take against the will. This construction gives effect to the language of both acts and harmonizes the provisions of both the Wills Act and the Intestate Act."

In the instant case it is to be remembered that the partial intestacy of Joseph M. Deist is an actual intestacy; that it is not a case of declaration by judicial construction of a purported will creating a partial intestacy, but rather is the judicial declaration of a testamentary writing which in reality creates a partial testacy.

A third question presented by this record is: Did the administrator err in including the amount of the bank savings account in the inventory and appraisement for the purposes of calculating the transfer inheritance tax and debts of decedent only and not for eventual distribution to the heirs at law?

Having already found that the bank account was disposed of by decedent by his testamentary writing, the signature card-pass book, it follows that Annie Laurie Deist, widow, is the legatee thereof and that the two brothers and sister are therefore not entitled to any portion thereof; consequently it is not a part of the estate for distribution to the heirs at law.

For the reasons herein set forth, we now enter the following

### Order

Now, November 3, 1950, the exceptions to the appraisement filed April 24, 1950, are overruled, the exceptions to the allowance of the spouse's exemption filed April 27, 1950, are overruled, the probate of the testamentary writing is sustained, the appeal perfected as to the probate of the testamentary writing is dismissed, all at the costs of exceptants-appellants.