OCTOBER TERM, 1883. NO. 122. OCTOBER 11, 1883.

## Shipler's Appeal.

A testator declared that he did not intend that his will "should be in existence," and subsequently that "he had destroyed the will—he had torn it and burned it." He had been informed by counsel of the legal means of revoking a will. The will was originally written on a full sheet of legal cap paper, and was folded in four folds. There was no writing on the outer sheet excepting an indorsement in the handwriting of the scrivener, "Last Will of Joseph Shipler." The testator tore off and burned the outside sheet of the will. Upon the will, as probated, there were four tears on the left-hand side extending one half inch toward the ruled lines, and reaching to within seven eighths of an inch of the writing. They were made by tearing the will in one place when it was folded. They were not in it when it was returned to the testator by his counsel, and were in it when he died. Upon the page containing the commencement of the will, and above all of the writing, were the words in lead pencil, in the handwriting of the testator, "Last will of Joseph Shipler." *Held* that there was no evidence sufficient to warrant a jury in finding that the testator revoked the will.

2. *Semble*, that tears which leave the will to exist in the manner framed by the testator might work a revocation, if they were clearly shown *aliunde* to have been made by him *animo revocandi*.

3. *Quaere* whether if they were shown to have been made by him *animo revocandi* and no explanations were given as to why he did not extend them into the written text of the will, or its signature, the law would regard such tearing as a destruction.

4. No declared intent to revoke is a revocation.

5. The declarations of the testator that he had destroyed his will by tearing it into two pieces and burning one of them, or one half of the will are, as evidence of revocation, more than neutralized by the production of the sheet in the condition in which it appeared.

Before GORDON, TRUNKEY, STERRETT. GREEN, and CLARK, JJ. MERCUR, C. J., PAXSON, J., absent.

*Certiorari* to the Orphans' Court of *Mercer County*
Appeal of P. E. Shipler from the decree of the Orphans'

Court refusing to grant an issue to test the validity of the will of Joseph Shipler.

Joseph Shipler died, having made his last will and testament, dated October 13, 1872, which was duly admitted to probate. On May 13, 1882, P. E. Shipler, as heir-at-law of the testator, presented a petition asking for an issue. May 15, 1882, Mary S. Shipler, widow and devisee of the testator, filed an answer denying the facts alleged in the petition.

June 15, 1882, John J. Alexander, was appointed examiner to take testimony.

April 9, 1883, the Court, McDermitt, J., filed the following opinion, in which the facts fully appear:

"From the papers in evidence these facts appear:

Said alleged will was written and executed the 13th of October, 1872.

Said testator died on the 16th of September, 1881.

On the 19th of September, 1881, said P. E. Shipler filed in the proper office a caveat against the probating of said will.

Said will was probated on the 18th of November, 1881.

A rule to show cause why an issue should not be granted was granted on the 13th of May, 1882, when an examiner was also appointed.

In his petition for an issue, the appellant assigns as reasons therefor:

That the testator had become dissatisfied with said will, and declared to its then custodian that he intended to destroy it, and requested such custodian to give him possession of it, which request was complied with.

The testator declared to said former custodian that he had destroyed it by tearing it into two pieces and burning a part of it.

That from then on to his death, he declared, in the most solemn manner, to other persons that he had no will, that he had destroyed the only will he ever had, that he had torn it into two pieces, and burned a part of it.

That said will, when written, was on one full sheet of legal cap, and a part thereof has been entirely torn off and the remaining part has been torn with evident violence.

That the said remnant, now claimed to be said testators's last will and testament, was forcibly or surreptitiously taken by the principal beneficiary (testator's widow) under said will, and by her hidden and preserved until the death of the testator, and was then produced by her for probate, whereby she seeks ' to avoid the effect

of the revocation and destruction of said instrument as aforesaid,' etc.

In her answer to the rule to show cause, the appellee denies all the material allegations of fact set forth in the said petition of the appellant.

From the evidence taken before the examiner, the following facts are found :

Said will was written by the Hon. William Stewart, a brother-in-law of testator, and the custody of it was retained by said scrivener until his death, and after that it remained in the custody of Robert A. Stewart, his son, and the testator's nephew.

I may, in this connection, take judicial notice of the fact that said Robert is a gentleman learned in the law, and had been a member of the bar of said county for some time prior to the conversations referred to by him in his testimony, and had by him with the testator relating to this will.

The testator told said Robert one or two years before his death, 'that he did not intend it (said will) should be in existence' when he died ; and, in the same conversation, he requested said Robert to give him possession of it, which he, in a few days, did.  A short time after it was returned to him, he, in a conversation, said to the said Robert : 'Oh, Robert, I destroyed that will,　*　* I put it away where nobody will find it, in a safe place.' Said Robert then said to him, that that 'would not do.  If you were to die, they would find it, and that would not be a legal revocation.  I then explained to him to destroy a will, it must be burned, torn, or canceled, and my recollection is that I got Purdon's Digest and read him the act of Assembly relating to revocation of wills.'

A short time after this conversation, testator remarked as follows to said Robert : 'That he had destroyed the will.　*　* He had torn it and burned it.'

Testator told P. E. Shipler, the appellant, two or three days before his death, that he had destroyed the will written for him by William Stewart, and that his wife did not have it in her possession then, and he also said to him, in the presence of Dr. Monroe, the day before the night he died : 'Ess, (the said appellant meaning,) so certain as I lie on this bed, I destroyed that will; I tore it in two and burned one half of it.'

As the appellant offered no testimony tending to show that the appellee forcibly or surreptitiously took posses-sion of and preserved said will until the testator's death, as charged in the petition, with a view of thereby avoid-

ing such alleged revocation of it, and as the appellee testifies she did not, I cannot find as a fact that she did.

The will was written on a full sheet of legal cap paper, united at the top in the usual style of such paper, and was folded in the form lawyers usually fold such papers, to wit: in four folds. There was no writing on the outer sheet except an indorsement in the handwriting of the scrivener, 'Last will of Joseph Shipler.'

On the page containing the commencement of the will, and above the highest ruled line thereon, and also above all the writing in the will, and in the lead pencil handwriting of the testator, are the following words in this form:

'LAST WILL

OF

JOSEPH SHIPLER.'

These words were not written there when said Robert A. Stewart returned the will to the testator as aforesaid.

The paper upon which the will is written has three perpendicularly ruled lines on the left-hand margin, and one inch and seven sixteenths of an inch from the extreme edge of the paper. There are four tears in the left-hand side of the will equi distant from each other, and extending one half inch toward said perpendicular lines. Numbering them downward, the first and third incline upward and the second and fourth downward. These tears were made by tearing the will in one place when it was folded into four folds; for when it is so folded, they are directly opposite one another both in length and direction. They were not in the will when it was returned to the testator by said Robert A. Stewart.

The evidence taken by the examiner is conflicting as to whether they were in the will when the testator died. The appellant and Robert A. Stewart testify they saw them in it the evening of the funeral, and H. A. Gamble, a clerk in the register's office, testifies they were in it when it was brought to the office for probate, and that they looked as old then as when he was testifying, and that they could not have been made within ten days preceding the time when the will was produced for probate. Robert Stewart had possession of the will the evening of the funeral, and kept it three or four days; and he testifies they were not made while he had it; but he does not state whether or not they were then in it.

On the other hand, the appellee, her daughter, Mrs.

[Shipler's Appeal.]

Helen M. Dight, and her husband, William M. Dight, testify they were not in it in the evening of the funeral.

The appellant and appellee have each a direct legal interest in the result of the appeal. But the appellant's two corroborating witnesses have neither a direct nor indirect interest therein, whilst the two corroborating witnesses of the appellee have an indirect interest in supporting the will.

In view of two of the appellant's witnesses being disinterested, I find, as a fact, that these tears were in the will when the testator died. I also find, as a fact, that the testator tore off and burned the outside sheet of the will, but there was no writing thereon save the indorsement, "Last will of Joseph Shipler."

The appellee testifies that she showed the testator said will on Wednesday or Thursday before his death, and that he said 'this will is a good will.' He died Friday morning. She also testifies that he wanted to erase a fifty-dollar annual legacy he had therein given to his mother, but she persuaded him not to do so.

The will had not been in the *actual* and *exclusive* possession of the testator for some considerable time before his death. There is no direct or indirect evidence that he intentionally made said four tears in the will, *animo revocandi*, nor evidence of any nature from which such fact should be inferred.

The revocation of this will is claimed to have been made under the thirteenth section of the act of 8 April, 1833, P. L., 250, which reads, 'no will in writing concerning any real estate shall be repealed, nor shall any devise or direction therein be altered, otherwise than by some other will, or codicil in writing declaring the same, executed and proved in the same manner as hereinbefore provided, or by burning, canceling, obliterating, or destroying the same by the testator himself, or by some one in his presence and by his express direction.'

It is not pretended that the testator repealed or altered this will by making another will, or codicil in writing, but he is alleged to have revoked it by one of the modes designated in the concluding clause of said section, and this clause reads, 'or by burning, canceling, obliterating, or destroying the same by the testator himself, or by some one in his presence and by his express direction.'

"To comply with the statutory requisition of revocation by destroying, there must be some act of destruction, or towards destruction, done *animo revocandi*—mere

words will not suffice.' Clingan *v.* Mitcheltree, 31 Pa. St. 25.

That the testator declared he would destroy said will, and that he had done so, are facts fully established by the evidence. But notwithstanding these facts are so established, these further facts are established in the same way, to wit:

1. That he only fully burned, or destroyed, the outside sheet of the paper upon which the will was written.

2. That the only words written on said outside sheet were 'Last will of Joseph Shipler,' and these were written by the scrivener.

3. That the sheet upon which was written the entire scrip, or body of the will, was neither burned nor destroyed.

4. Indorsed on the upper end of this sheet and directly above the commencement of the will, are these words, and in the following order:

'LAST WILL
OF
JOSEPH SHIPLER.'

5. This indorsement is in lead pencil and in the handwriting of the testator.

Before the destruction of said outside sheet, Robert A. Stewart, Esq., a member of this bar, had explained to the testator the different legal modes by which he could, alone, revoke his will, and also read to him said section of said act.

Ordinarily and naturally, a person contemplating the commission of a given act adopts the easiest, if not the most certain, mode of accomplishing it. If the testator intended to destroy his will by burning it, why would he, for that purpose, first separate its sheets? If he intends to burn one sheet and preserve the other, such separation is not only natural, but necessary. Ordinarily, a person wishing to destroy, by burning, a paper written on a double sheet, would toss both sheets into the fire bodily. But, in this instance, the only sheet worth preserving was carefully separated from the worthless sheet and the latter burned or destroyed, whilst the former was not only retained, but carefully indorsed by the testator, and alleged spoiler, 'Last will of Joseph Shipler.' And this indorsement he doubtless intended to remain in lieu of the same indorsement on the back of the destroyed sheet. With the evidence before me, I cannot separate the acts

of destroying the outside sheet, and the writing of such indorsement on the preserved sheet. And if this indorsement was written at the same time, or as a part of the *res gestæ* of the act of the testator when he tore off and destroyed said sheet, his intent in writing it overthrows any intent he may, from such tearing and destruction, be presumed to have had of destroying or revoking his will entirely.

Beyond the burning or destruction of said outside sheet, no 'act of destruction or toward destruction done *animo revocandi*,' is to be found in the evidence, save said tears, which will, hereafter, be noticed.

As there is no evidence of anything having been written on said destroyed sheet, except the indorsement written by the scrivener, 'Last will of Joseph Shipler,' neither the appellee nor any third party should be presumed to have had any interest in its destruction. It must not, therefore, be presumed that she or any third party destroyed it for the purpose of removing a cancellation of the will, which the testator may be conjectured to have written thereon, for before any one 'can be fixed with the character of a spoiler, the purport of the paper must be proved to have been what it is surmised to have been.' McReynolds *v.* McCord, 6 W., 288.

The four tears are in the left-hand margin of the paper upon which the will is written. They are about one half inch long, and do not approach the writing of the body of the will more closely than about the seven eighths of an inch.

Tearing is not enumerated in said act of 1833 as one of the modes of revoking a will, but if the written body of a will was torn into two or more pieces, and such tearing was shown to have been done by the testator himself, or by some one in his presence and by his express direction, and with the intent on his part of revoking his will, such tearing would constitute a destruction within the meaning of said act.

I think I have already shown that this will has, so far as the evidence shows, never been revoked by 'burning;' and that it has been revoked by 'canceling or obliterating' it within the meaning of those terms as employed in said act, is not, as I understand his counsel, pretended by the appellant. Its 'destruction,' therefore, by tearing, is, under the evidence, the only ground upon which its revocation can possibly be predicated.

The words 'burning,' 'canceling,' 'obliterating,' and 'destroying' in said act are used in their popular sense,

and thus used, they secure the object of the Legislature—a complete manifestation of an executed intention to repeal the will, etc.: Evans' Appeal, 58 Pa. St., 238. 'Each word is expressive by an act done to the paper itself, a mark upon it, evincible of a present intent that it shall not operate as a will.' *Id.* 'Declarations both verbal and written (of the testator) are admitted to show with what intent an act of apparent destruction or cancelation was done.' *Id.*

By the expression, 'destruction of a will,' is commonly understood a disintegration and decomposition of the material on which the will is written, but, as we see, destruction can be effected by doing something tantamount thereto, and the whole document, in order to be revoked, need not necessarily be torn, burnt, or otherwise destroyed, but there must be a destruction of so much as to impair the entirety of the will, so that it may be said that the will does not exist in the manner framed by the testator: Flood on Wills, 344, *et seq.*, cited in note 28, on page 303 of 1 Jarman on Wills, 5th Am. Ed.

This is cited to prove that where it is sought to show a 'destroying' of a will by a testator without proof of his words denoting an *animo revocandi*, 'there must be a destruction of so much as to impair the entirety of the will, so that it may be said that the will does not exist in the manner framed by the testator.' Now, these tears may be cut away from the paper entirely, and yet the will will still exist precisely 'in the manner framed by the testator.'

'The degree of tearing, canceling, or obliterating necessary to the revocation of a will is not fixed by the statute. This must depend upon the circumstances of the case. If a will be thrown into the fire and consumed, or if it be torn into many pieces by the testator, the violent presumption would be that the instrument was burnt or torn *animo revocandi*, and it would require strong evidence to rebut this presumption; but if a will be only slightly burned or torn, there would arise no presumption from the act itself of the intention or the *quo animo* with which it had been done, and the will would not be revoked; but if the slightest burning or the slightest tearing be accompanied with satisfactory evidence, drawn *aliunde*, of the intention to revoke, the statute will be satisfied and the will revoked:' Johnson *v.* Brailsford, 2 Nott and McCord, (South Car.,) 272, S. C. 10, Am. De., 601. The act under which this case was ruled differs

from ours only in including tearing as a mode of revocation.

The evidence claimed by the appellant to show that these tears were made by the testator is contained in the following extract from testimony of Robert A. Stewart: 'A short time after this, he (the testator) was again in the office, and he told me that he had destroyed the will. I asked him how. My best recollection is, he told me he had torn it and burned it. And I replied that that would be good and the hiding would not,' and in the following from the evidence of P. E. Shipler, the appellant: 'I told him that I thought he had a will that Uncle William had written for him. He said he had had such a will, but had destroyed it. I told him that I thought mother had it then in her possession. He said she had not, and repeated again, he had destroyed it.' * * * 'As soon as I sat down, he turned to me and said: 'Ess, so certain as I lie on this bed, I destroyed that will. I tore it into two and burned one half of it.' These extracts conclusively show the testator to be of the opinion that his will was not revoked by tearing alone, for he always declared he had destroyed it by tearing and burning it, and never by tearing alone. It is, by any fair interpretation of his language, impossible to find that he ever was in the *animo revocandi* by tearing alone. If the written sheet of the will with his own indorsement, 'last will of Joseph Shipler,' thereon, was not in existence, there would, under the evidence, be no difficulty in finding a revocation; but it is present, and 'will not down.' That Joseph Shipler willfully falsified in his dying declarations upon his known death-bed, as to having destroyed this will, it is impossible to believe but that he did so mistakenly is established beyond the possibility of doubt by its existence and production. My own theory is, that when he tore off and burned the outside sheet, and so indorsed the written sheet, he intended to destroy the latter sheet in the future, but neglected to do so for some time, and when he wished to do so, he could not find it. And he could, after several fruitless searches for it, easily and naturally fall into the belief that he had destroyed it. In such honest belief he doubtless died. But no intention to destroy in the future, even if the testator honestly but mistakenly believes at the time of his death that he has executed such intention, works a revocation: Clingan v. Mitcheltree, *supra*. But returning to the tears. The will is not shown by the testimony of any one to have been exclusively in the possession of the testator at the

time of his death. In fact, the personal evidence of the appellee shows it was not. As others had had it, no presumption arises that the testator made the tears. There is no direct evidence that he did, nor is there, as before explained, any that he threatened to destroy his will by tearing of this kind. Tears like these, which leave the will to 'exist in the manner framed by the testator' might possibly work a revocation, if they were clearly shown *aliunde* to have been made by him *animo revocandi.* But such evidence is utterly wanting.

It must be borne in mind that the proper legal modes of revoking his will had been clearly explained to the testator, and the act of Assembly on that subject read to him. In the light of common sense it is impossible to believe that a testator, whether lawyer or layman, intelligent or ignorant, on the modes of revocation, would attempt to revoke his will by destroying it through the means of tearing it, and so tear it as to leave it to 'exist in the manner framed' by himself, or in other words, without tearing off his signature or tearing some of its written lines or words. If any presumption could arise that these tears were made by the testator *animo revocandi,* it would be followed by another presumption, to wit: that he had changed his mind before tearing the paper into the written body of the will, and, therefore, desisted from tearing the body of the will.

The meaning of the words 'burning, canceling, obliterating, or destroying' as used in said act of 1833, are thus explained by Judge Strong in Evans' Appeal, *supra:* 'It is true we have to do with the meaning of the words 'canceling, obliterating, and destroying' as used by the Legislature, but there is nothing in the statute that requires us to attach to them any unusual signification. Let it be admitted that, collocated as they are, we are required to consider them as defining acts of a similar nature. We do. All are acts done to the will itself, and they are not used in their absolutely literal sense. Even burning does not mean entire consumption by fire. This is not claimed, and under a statute very similar it has been so ruled: Bibb *ex dem.* Mole *v.* Thomas, 2 William Blackstone, 1043; Reed *v.* Harris, 33 E. C. L., 57. Nor is obliteration, as meant in the act, nothing short of effacing the letters in the will, scratching them out, or blotting them so completely that they cannot be read. A line drawn through the writing is, doubtless, obliteration, though it may leave it as legible as it was before. So the destruction spoken of is not necessarily annihilation, or a change into other

forms of matter. Tearing into fragments is unquestionably destruction, though the fragments may be re-united. All the words are used in their popular sense, and thus used, they secure the object the Legislature had in view, a complete manifestation of an executed intention to repeal. Each word is expressive by an act done to the paper itself, a mark upon it, evincible of a present intent that it shall not operate as a will.'

There is not one word of this will which is wholly or partially burned, canceled, obliterated, or destroyed. Nor is there a tear or tears upon it 'evincible of a present intent that it shall not operate as a will.'

There is no evidence tending to show whether these tears were made before or after the written sheet of the will was indorsed, 'Last will of Joseph Shipler.' They are, therefore, just as likely to have been made before as after that, and if before, no possible presumption can arise that they were made by him *animo revocandi*. That they were made by violence is apparent, but whether this violence was inflicted intentionally is not shown by the evidence.

Even if they were shown to have been made by him *animo revocandi*, and no explanation given as to why he did not extend them into the written text of the will, or its signature, it is extremely doubtful whether the law would regard such tearing as a destruction, and, therefore, a revocation of the will.

The issue prayed for should not be granted unless the evidence is sufficient to warrant a jury in finding that the testator did revoke his will by tearing it into two pieces and burning one of them or one half of the will, or that he so tore it as to be the equivalent of its destruction *animo revocandi*, and in my opinion no such evidence has been adduced, because:

1. No declared intent to revoke is a revocation.

2. The testator's declarations that he had destroyed his will by tearing it into two pieces, and burning one of them or one half of the will, are as evidence of revocation more than neutralized by the production of the sheet upon which is written the entire and unblemished text of the will, including the signatures of the testator and witnesses, and with the indorsement therein in his own handwriting, 'Last will of Joseph Shipler.'

3. To find that the will was revoked by said tears, the following inferences must be first drawn:

I. That they were made subsequent to the testator tearing the sheets of the will apart and burning or destroying

one of them, and indorsing the other, 'Last will of Joseph Shipler.'

II. That he made them *animo revocandi.*

But there is no evidence to warrant a jury in drawing the first of these inferences, and even if there was, the law of evidence would not permit a jury to draw the second one from the first; for, in law, inference upon inference is not tolerated.

And now, April 9, 1883, issue as prayed for refused."

P. E. Shipler then took an appeal, and assigned as error the refusal of the Court to grant the issue as prayed for.

*S. Griffith & Son, B. Magoffin, Stranahan & Mehard* for appellant.

The testator repealed his will, in accordance with the act of 8 April, 1833, s. 13 and 14, by burning and destroying it *animo revocandi.* The facts fully show an intention to destroy or cancel the will. If the intention to revoke is established, the slightest act to carry out the intention ends its existence as a will: Evans Ap., 58 Penna., 246 ; Warner *v.* Warner, 37 Vt., 356 ; Avery *v.* Pixley, 4 Mass., 460 ; Williams on Executors, 110 ; Bohanon *v.* Walcot, 1 How., (Miss.,) 336 ; Price *v.* Powell, 3 H. and N., 341 ; Williams *v.* Tyley, Johns, 530 ; Mole *v.* Thomas, 2 W. Bl., 1043 ; Jarman on Wills, Vol. I, p. 286–7.

*S. H. Miller* and *Q. A. Gordon* for appellee.

The will was not burnt or destroyed in accordance with the act of 1833, for it exists now in perfect condition. Tearing or burning a blank leaf does not indicate an intention to destroy the will. Even if it were done *animo revocandi*, it would not amount to a revocation under the statute : Heise *v.* Heise, 31 Penna., 249 ; Evans' Ap., 58 *Id.*, 238. A will cannot be revoked by parol. There must be such an injury with intent to revoke as destroys the entirety of the will : Reed *v.* Harris, 6 A. and E., 209.

Appellants' counsel in reply.

If the intent be perfect, the slightest, most imperfect act will carry it into effect, provided it be such as the law prescribes, and be done to the paper on which the will is written. It is impossible to draw the line or to establish the degree in which the act must be done. The acts and declarations of testator add weight to the presumption that he intended to repeal the will : 1 Jarman on Wills, 289 · Redfield on Wills, 318 ; White *v.* Casten, 1 Jones, N.

C. 197; Moore *v.* DeLaTorre, 1 Philmore, 375; Warner *v.* Warner, 37 Vt.; 365.

PER CURIAM: We are so well satisfied with the opinion of the learned judge of the Court below in this case that we affirm his decree for the reasons set forth in that opinion.

The decree is affirmed, and it is ordered that the appellant pay the costs.