NOTE.—See Gill's Estate, 8 D. & C. 179.

---

## Farren's Estate.

*Wills—Probate—Tearing of signature—Act of June 7, 1917.*

1. A paper writing, purporting to be a last will and testament, from which the surname of the testator was torn away from the signature, will be admitted to probate where it appears that the paper was in the testator's possession at the time of his death, and there is no evidence to show that he intended to revoke the will.

2. In such case, there was no burning, canceling, obliterating or destroying within the meaning of the Act of June 7, 1917, P. L. 403. There was a mere tear.

3. The mutilating of a will by tearing does not accomplish a revocation unless done *animo revocandi.*

Appeal from decree of register of wills refusing to admit to probate a paper writing as the will of decedent. O. C. Mongtomery Co.

*Charles D. McAvoy,* for appellant; *George K. Brecht,* for guardian *ad litem.* *High, Dettra & Swartz,* for Register of Wills.

SOLLY, P. J.—Joseph H. Farren died Oct. 4, 1925, leaving surviving him his wife, Mary E. Farren, and four minor children. After his death, a paper writing, in form a will, dated Jan. 12, 1920, was found in a sealed envelope in a pigeon-hole of his private desk at his office, 722 Lafayette Building, Philadelphia. The envelope had a number of lead-pencil memoranda on it. The desk was locked. The paper, a single sheet, is handwritten. It originally bore the decedent's full signature. When found, it bore only the first name and initial letter of the middle name of the decedent's signature, his last name

having been torn out, leaving a jagged gap, elliptical in shape, running from the right margin. To the left of the signature is a "Seal," and to the left of the seal is another tear running generally perpendicular to the writing. The extremities of this tear, neither of which reaches the margin of the paper, bear to the right, one above and the other below the signature, so that if continued the entire signature and the seal would have been torn out. In addition, a line is drawn through the words "for her own use absolutely" in the gift of the entire estate to the widow. Except as stated, the paper writing is intact, unmutilated and undefaced. The tears do not remove or obliterate any word of the instrument except the surname of the decedent. The instrument was offered for probate Oct. 24, 1925, and, notwithstanding no objection was made, the register of wills refused to admit it to probate as the will of the decedent, for the reason it is in such condition that he believed the decedent "intended to cancel, obliterate and destroy the same." The widow, on Nov. 28, 1925, entered an appeal from the decree of the register of wills. A citation was granted Dec. 14, 1925, on George K. Brecht, Esq., who was appointed guardian *ad litem* of the decedent's minor children, to show cause why the appeal should not be sustained and the register of wills directed to admit the instrument to probate and to grant letters testamentary thereon to the executrix therein named. The guardian has made answer, alleging (1) that the instrument is not signed at the end thereof; (2) that the mutilation of the signature and the tears are evidence of the intention of the decedent to cancel it as his will. Testimony was heard in support of the appeal; from it are found the facts which make up the history of the case as given above.

Was such an essential part of the instrument or will torn as to be in law equivalent to its destruction or obliteration? Section 2 of the Wills Act of June 7, 1917, P. L. 403, provides that "Every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof. . . ." Section 20 *(a)* provides that "No will in writing concerning any real estate shall be repealed, nor shall any devise or directions therein be altered otherwise than by some other will or codicil in writing, or other writing declaring the same, executed and proved in the manner hereinbefore provided, or by burning, canceling, obliterating or destroying the same by the testator himself, or by some one in his presence and by his express direction." Section 20 *(b)* provides that "No will in writing concerning any personal estate shall be repealed, nor shall any bequest or direction therein be altered otherwise than as hereinbefore provided in the case of real estate. . . .'

In this case there is no burning, canceling, obliterating or destroying; there was a tear. The will here was a complete one, signed by the decedent at the end thereof, in the presence of two subscribing witnesses. The tearing was done either accidentally or intentionally by the decedent after the will was executed, because it remained in his custody until his death. It is not contended by the appellant that because the word "tear" is not in the Wills Act, its omission would prevent revocation by such a tearing as would work the physical destruction of the will. It is admitted as a matter of law that any tearing which does not work destruction of the instrument, in the absence of evidence of an intention to revoke, raises no presumption of an intention to revoke. Our law favors testacy. Settled rules of law in favor of the validity of wills and of testacy have been laid down from time to time. If the will in its original form had been offered for probate, it would have been entitled to admission. A signature of a first name and middle initial is a sufficient compliance with the Wills Act: Knox's Estate, 131 Pa. 220; Kim-

mel's Estate, 278 Pa. 435; Simcox's Estate, 56 Pitts. L. J. 78. Instruments which at this day must be made with solemn formalities are revocable in modern policy only by acts equally solemn and positive, or nearly so: Schouler on Wills, § 576. It is fundamental that a mutilation of a will by tearing, burning or otherwise does not accomplish the revocation unless done *animo revocandi*. The intent to revoke is essential: 28 Ruling Case Law, 178.

A tearing of a will does not necessarily of itself raise a presumption of an intention to revoke. To have that effect it must be of an essential part of the will, such as operates to destroy the entire will. "The whole will is not necessarily revoked by the destruction of a part. It is the animus which must govern the extent and measure of operation to be attributed to the act and determine whether the act shall effect the revocation of the whole instrument or only of some, and what portion thereof. It is obvious that the mutilation may be of such a part as to afford evidence that the deceased did not intend the document any longer to operate as his will. On the other hand, in the absence of evidence *aliunde* an intent to revoke the whole will cannot be inferred from a partial mutilation, which does not affect the instrument as an entirety or destroy that part which gives effect to the whole:" 40 Cyc., 1191, 1192; Shipler's Appeal, 3 Penny. 272; Cook's Estate, 5 Clark, 1; Ramsey's Will, 2 Dist. R. 425.

If the decedent intended to revoke his will by tearing, it would seem that the easy method would have been by tearing off his whole signature. He did not do that, assuming that he did it intentionally and that the tearing was not accidental, but he tore out only his surname, apparently taking pains not to disturb his first name and middle initial. The natural inference or presumption is that he did not intend to unequivocally revoke the will, otherwise he would have obliterated his entire signature. At most, the act was equivocal, and the burden of establishing that his act was unequivocal and done with the intention of revoking his will is upon those who assert the existence of such intent. "Ordinarily and naturally, a person contemplating the commission of a given act adopts the easiest, if not the most certain, mode of accomplishing it. By the expression 'destruction of a will' is commonly understood a disintegration and decomposition of the material on which the will is written, but, as we see, destruction can be effected by doing something tantamount thereto, and the whole document, in order to be revoked, need not necessarily be torn, burnt or otherwise destroyed, but there must be a destruction of so much as to impair the entirety of the will, so that it may be said that the will does not exist in the manner formed by the testator. . . . Now, these tears may be cut away from the paper entirely, and yet the will will still exist precisely in the manner framed by the testator: . . ." Shipler's Appeal, 3 Penny. 272.

Whatever intent to revoke may be inferred from the physical appearance of the will is obviously an arrested intent. As a consequence, there is no revocation. "If the testator abandons his intention of revoking the will before the act of destruction is complete, the will remains unrevoked:" 40 Cyc., 1187, 1188. See, also, Evans's Appeal, 58 Pa. 238. There is no direct evidence that the tearing of the will was the deliberate act of the decedent. The positions of the two tears in the will would seem to indicate that they were accidentally caused in picking up or moving the will while it was held fast by some weight. This conclusion is almost irresistible, because the testator carefully preserved it in a sealed envelope among his valuable papers. He left intact part of his signature, and his subsequent preservation of the will can be explained only on the theory that he intended it to be his will. He left

it in a form which met the requirements of the law.  As we have seen, no
essential part of it was torn or destroyed.  His act was equivocal, and no
intention to revoke can be presumed.  We cannot find in this case, from the
facts, that the tearing of the will was deliberate, unequivocal and *animo revo-
candi*, nor that the tearing destroyed a material part of the will.  Our con-
clusion is that the paper writing should be admitted to probate as the last
will and testament of the decedent.

And now, May 24, 1926, the appeal is sustained and the register of wills is
directed to admit to probate as the will of Joseph H. Farren the paper writing
which bears date Jan. 12, 1920, and to grant letters testamentary to Mary E.
Farren, the executrix therein named.

From Aaron S. Swartz, Jr., Norristown, Pa.